UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Gary D. and Carolyn L. Bulpitt

    v.                                         Civil No. 16-cv-399-JD
                                                    Opinion No. 2017 DNH 248
Carrington Mortgage Services, LLC
and Deutsche Bank National Trust
Company, as Trustee for the New
Century Home Equity Trust 2005-3


O R D E R


    Gary D. and Carolyn L. Bulpitt brought suit against

Carrington Mortgage Services, LLC ("Carrington") and Deutsche

Bank National Trust Company, as Trustee for the New Century Home

Equity Trust 2005-3 ("Deutsche Bank") after the foreclosure sale

of their home in Atkinson, New Hampshire.  The defendants have

moved for summary judgment on the remaining claims in the case.

The plaintiffs object.


Standard of Review


    In the order issued on September 6, 2017, the court granted

the defendants leave to file a dispositive motion, <u>either</u> a

motion to dismiss <u>or</u> a motion for summary judgment, on the

plaintiffs' remaining claims.[1]  In response, the defendants filed

_____

    [1] Different standards of review and response times apply to
motions under Federal Rule of Civil Procedure (12)(b)(6) and

a motion for summary judgment, document no. 41, pursuant to
Federal Rule of Civil Procedure 56.  In the defendants' attached
memorandum in support of the motion, however, they represent
that the motion was intended both to seek dismissal under Rule
12(b)(6) and summary judgment under Rule 56, without explaining
why they were proceeding under both rules.[2]  To avoid unnecessary
confusion, the court treats the motion as one seeking summary
judgment under Rule 56.

Summary judgment is appropriate when the moving party
"shows that there is no genuine dispute as to any material fact
and the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(a).  "A genuine dispute is one that a
reasonable fact-finder could resolve in favor of either party
and a material fact is one that could affect the outcome of the
case."  Flood v. Bank of Am. Corp., 780 F.3d 1, 7 (1st Cir.
2015).  The facts and reasonable inferences are taken in the
light most favorable to the nonmoving party.  McGunigle v. City
of Quincy, 835 F.3d 192, 202 (1st Cir. 2016).

---

Federal Rule of Civil Procedure 56, making it inappropriate to
seek relief under both rules in a single motion.  <u>See</u> LR
7.1(a)(1).

  [2] In addition, the defendants rely on the affidavit of
Elizabeth A. Ostermann, along with ten documents submitted with
the affidavit, to support their motion.  They do not show that
the affidavit or the appended documents could be considered for
purposes of a motion to dismiss under Rule 12(b)(6).

The purpose of summary judgment is to determine whether a trial is necessary. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "On issues where the movant does not have the burden of proof at trial, the movant can succeed on summary judgment by showing 'that there is an absence of evidence to support the nonmoving party's case.'" OneBeacon Am. Ins. Co. v. Commercial Union Assurance Co. of Canada, 684 F.3d 237, 241 (1st Cir. 2012) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). If the moving party provides evidence to show that the nonmoving party cannot prove a claim, the burden shifts to the nonmoving party to show that there is at least a genuine and material factual dispute that precludes summary judgment. Woodward v. Emulex Corp., 714 F.3d 632, 637 (1st Cir. 2013).

In this district, "[a] memorandum in support of a summary judgment motion shall incorporate a short and concise statement of material facts, supported by appropriate record citations, as to which the moving party contends there is no genuine issue to be tried." LR 56.1(a). "A memorandum in opposition to a summary judgment motion shall incorporate a short and concise statement of material facts, supported by appropriate record citations, as to which the adverse party contends a genuine dispute exists so as to require a trial." LR 56.1(b). Importantly, "[a]ll properly supported material facts set forth

in the moving party's factual statement may be deemed admitted unless properly opposed by the adverse party." Id.

The Bulpitts, who are represented by counsel, failed to provide record citations in their statement of facts.[3] The requirements of Rule 56.1 were explained in the court's order granting in part and denying in part the defendants' previous motion for summary judgment. See Doc. no. 22. Despite that explanation, the Bulpitts' counsel again failed to comply with the rules.

Pursuant to Local Rule 56.1(b), the court is authorized to deem the defendants' properly supported facts to be admitted by the Bulpitts, as occurred for purposes of the previous motion for summary judgment. Because the Bulpitts submitted Gary Bulpitt's affidavit and several documents with their memorandum in opposition to the motion, however, the court will consider those exhibits in deciding the defendants' motion for summary judgment.

## Background

In April of 2005, Gary Bulpitt obtained a loan from New Century Mortgage Corporation to buy property in Atkinson, New

---

[3] The Bulpitts' counsel requested and was granted an extension of time to file the opposition to the motion for summary judgment. Nevertheless, the opposition was filed in the early morning of the day after the deadline and does not comply with the local rule.

Hampshire.  As security for the loan, both Gary and Carolyn

Bulpitt signed a mortgage on the property to New Century.  The

Bulpitts did not make the mortgage payment that was due in July

of 2011 and did not make any payments after that time.

Deutsche Bank is the trustee for the New Century Home

Equity Trust 2005-3, which holds the Bulpitts' mortgage, and

Carrington is the mortgage servicer.  Carrington sent the

Bulpitts letters in 2013 that advised them of opportunities for

loan assistance.  The letters included Request for Mortgage

Assistance ("RMA") forms.

Carrington received a RMA form from Gary Bulpitt on

September 12, 2013, and sent him a letter acknowledging receipt

of the form.  A second letter was sent the same day that

notified Gary Bulpitt that the RMA was incomplete and requested

additional documents and information to be sent by October 12,

2013.[4]  Carrington represents that it received no response within

that time from the Bulpitts.[5]

---

[4] The documents and information required were current property
tax bills for all property owned by the Bulpitts, mortgage
billing statements for all properties not serviced by
Carrington, active homeowners insurance policies for all
properties, and current HOA billing statements.

[5] Elizabeth A. Ostermann, an officer of Carrington and
"attorney-in-fact for Deutsche Bank," provided her affidavit and
attached exhibits to show the history of interactions with the
Bulpitts.

Gary Bulpitt states in his affidavit that he sent an email to Carrington with three documents attached on October 10, 2013. He did not provide a copy of the email or the documents he believes he sent.  He represents that the documents were the first three documents listed in the prior notice and that the fourth document, presumably the HOA billing statements, did not apply.

On October 14, 2013, the defendants sent a second notice that the RMA was incomplete, listing the same four categories of documents as in the September 12 notice.  In that notice, the defendants set a deadline of October 29, 2013, to send the listed documents.  Gary Bulpitt states in his affidavit that he sent an email to Carrington at 8:46 am on October 29 "with [a]vailable requested information" and "repeated statement re non-applicable status of other requested documents," but he did not provide a copy of that email.  Carrington represents that it did not receive a response from the Bulpitts before the deadline.

On October 30, 2013, the defendants notified Gary Bulpitt that his RMA had been denied because his request for modification was incomplete.  That letter explained that Bulpitt could submit "an appeal for reconsideration by submitting written evidence that the denial was in error to CMS

[Carrington] within 30 calendar days from the date of this letter."

In his affidavit, Gary Bulpitt represents that he sent an email to Carrington on November 29, 2013, with attachments of updated versions of the previously submitted documents in response to the October 30 notice.[6]  The copy of the November 29 email provided with the objection states:  "Hi Shirley, I believe I have found my mistake.  I have sent the Complete!!Homeowners policy as requested. and an updated P&I Gary."  There is no response in the record from Carrington.

The defendants began foreclosure proceedings in November of 2015.  The Bulpitts received notice of the foreclosure sale to be held on December 3, 2015, and filed a petition to enjoin the sale.  On November 24, 2015, Gary Bulpitt sent Deutsche Bank a request for mortgage assistance, which was denied the next day. The foreclosure auction was held on December 3, 2015, and the property was sold to Deutsche Bank for $215,360.00.

The Bulpitts filed suit against Carrington and Deutsche Bank in state court in July of 2016.  In the complaint, the

---

[6] In his objection, however, Bulpitt represents that he sent the email on November 28.  Although not mentioned in his affidavit or in his objection, Bulpitt submitted two copies of a letter from him to Shirley Bates at Carrington dated November 28, 2013.  The letter states that it is in response to the October 30 notice.

plaintiffs alleged claims for equitable relief from the foreclosure sale, Count I; violation of the New Hampshire Unfair, Deceptive, or Unreasonable Collection Practices Act ("UDUCPA") and the federal Fair Debt Collection Practices Act ("FDCPA"), Count II; and violation of Regulation X of the Real Estate Settlement Procedures Act ("RESPA"), Count III. Although the Bulpitts mentioned the Equal Credit Opportunity Act ("ECOA") and Regulation B in the introduction to the complaint, they did not allege a claim based on Regulation B. The defendants moved for summary judgment.

In response to the defendants' motion for summary judgment, the plaintiffs initially argued that New Hampshire law does not provide a statute of limitations for federal claims, a matter not raised by the defendants' motion for summary judgment. In their surreply, however, the Bulpitts acknowledged that they could not prove their claims in Count I or their claims against Deutsche Bank in Count II, leaving a claim under the FDCPA against Carrington in Count II and claims against both defendants in Count III.

The court granted summary judgment in favor of the defendants on Counts I and II, and on Count III to the extent it was based on the request for mortgage assistance in November of 2015. Because the defendants did not address Gary Bulpitt's

request for mortgage assistance in 2013 as a trigger for Regulation X protection under RESPA, that part of the claim in Count III survived summary judgment.

The Bulpitts and the defendants moved for reconsideration, and the Bulpitts moved for leave to amend the complaint to state a claim under Regulation B of the ECOA, as part of Count III. The court denied the motions for reconsideration. The defendants objected to the motion for leave to amend because the Bulpitts failed to address the requirements for amending the scheduling order under Federal Rule of Civil Procedure 16(b)(4) and for seeking leave to amend under Local Rule 15.1 and asserted that the claims in the amended complaint were futile. The court allowed the Bulpitts to file the amended complaint but also granted the defendants leave to file a dispositive motion to address the Count III claims in the amended complaint.

The Bulpitts filed an amended complaint. The defendants move for summary judgment on the remaining claims in Count III.

Discussion

The defendants move for summary judgment on that part of Count III that asserts a claim under Regulation X on the ground that Regulation X was not in effect when Gary Bulpitt sought loan assistance in the fall of 2013. They move for summary judgment on the Regulation B claim on the ground that they fully

complied with the requirements of Regulation B.  The Bulpitts
object, arguing that Regulation X applies to their request for
loan assistance and that the defendants did not comply with
Regulation B.

A.   Regulation X

In the amended complaint, the Bulpitts allege that the
defendants violated RESPA by failing to comply with Regulation
X, 12 C.F.R. § 1024.41(f)(2) and § 1024.41(g), by conducting the
foreclosure sale of their property in 2015 while their RMA
submitted in September of 2013 was pending.  The defendants
contend that the claim fails because Regulation X was not in
effect in 2013 when Gary Bulpitt requested mortgage assistance
and because the facts do not support the Bulpitts' claim.  The
Bulpitts argue that their Regulation X claim is viable.

1.   Retroactivity

Regulation X was promulgated under RESPA pursuant to the
Dodd-Frank Wall Street Reform and Consumer Protection Act and
became effective on January 10, 2014.  Clark v. HSBC Bank USA,
N.A., 664 F. App'x 810, 812 (11th Cir. 2016); Berneike v.
CitiMortgage, Inc., 708 F.3d 1141, 1145 n.3 (10th Cir. 2013);
Hermosillo v. Caliber Home Loans Inc., 2017 WL 2653039, at *8
(D. Ariz. June 20, 2017); Sutton v. CitiMortgage, Inc., 228 F.
Supp. 3d 254, 260-61 (S.D.N.Y. 2017).  The First Circuit has not

addressed the issue of the retroactive application of Regulation

X.  Courts that have considered the issue have concluded that

Regulation X applies only to conduct that occurred after its

effective date and cannot be applied retroactively.  See

Campbell v. Nationstar Mortg., 611 F. App'x 288, 296-97 (6th

Cir. 2015); Parris v. Nationstar Mortg. LLC, 2017 WL 3951906, at

*3 (N.D. Tex. Aug. 18, 2017); Christenson v. CitiMortgage, Inc.,

255 F. Supp. 3d 1099, 1108 (D. Colo. June 1, 2017); Miller v.

Bank of N.Y. Mellon, 228 F. Supp. 3d 1287, 1291 (M.D. Fla.

2017).

In this case, Gary Bulpitt submitted an application in

September of 2013 and was notified that the application was not

complete in September and October of 2013, all of which occurred

before the effective date of Regulation X.  The foreclosure,

however, occurred in December of 2015, after the effective date.

Most courts have concluded that Regulation X applies only when a

complete application was submitted after its effective date,

January 10, 2014.[7]  See Costa v. Deutsche Bank Nat'l Tr. Co., 247

_____

[7] In White v. Wells Fargo Bank, N.A., 2015 WL 1842811, at *3
(E.D. Mich. Apr. 22, 2015), the court concluded that Regulation
X applied to all events because foreclosure had not occurred
before the effective date, even though the application was
submitted before that date.  The court relied on Lage v. Ocwen
Loan Servicing LLC, 2015 WL 631014 (S.D. Fla. Feb. 12, 2015), in
which the court expressed doubt in the context of a motion to
dismiss about the defendant's theory that Regulation X would not
apply because the application was submitted before the effective

F. Supp. 3d 329, 348 (S.D.N.Y. Mar. 30, 2017); Reed v. Bank of
Am. Home Loans, 2016 WL 3218720, at *10-*12 (D. Md. June 10,
2016); Lage v. Ocwen Loan Servicing LLC, 145 F. Supp. 3d 1172,
1184-89 (S.D. Fla. 2015); Kiplinger v. Selene Fin., LP, 2015 WL
9255564, at *6-*7 (W.D. Mich. Dec. 18, 2015).  That result is
necessary to avoid imposing new duties and liabilities under
Regulation X based on actions and circumstances that occurred
before its effective date.  See Lage, 145 F. Supp. 3d at 1182-
87; accord Kiplinger, 2015 WL 9255564, at *7

     Because the Bulpitts submitted their application in
September of 2013, before the effective date of Regulation X,
they cannot bring a RESPA claim for violation of Regulation X.
The Bulpitts argue, nevertheless, that the defendants are
equitably estopped from asserting that their application was not
filed after the effective date because: "There must be a remedy
when there is a wrong."

     There is no claim in this case for equitable estoppel.
Further, the Bulpitts' theory of equitable estoppel lacks merit.
They argue that the defendants are estopped "from asserting that

---

date.  That court subsequently reversed course, however, and
granted summary judgment in favor of the defendant because the
application was received before the effective date although the
foreclosure had not yet been held.  Lage v. Ocwen Loan Servicing
LLC, 145 F. Supp. 3d 1172, 1185 (S.D. Fla. 2015).  As a result,
the reasoning in White lacks persuasive value.

the application was not filed after the effective date of Reg X, because had it not been for their wrongdoing, Plaintiffs would have filed again."[8]  The Bulpitts have not shown that the defendants engaged in any wrongdoing or that the doctrine of equitable estoppel would apply in this case even if it had been properly raised.

To the extent the Bulpitts argue that the forbearance agreement, which expired on November 1, 2012, obligated the defendants to provide the same protections that apply under Regulation X, that theory cannot succeed.  The Bulpitts did not bring a claim for breach of the forbearance agreement, despite two opportunities to amend the complaint.  They cannot raise that claim now.

### 2.  No Violation

Even if Regulation X applied, the defendants contend that the Bulpitts cannot show that a violation occurred.  The Bulpitts did not attempt to prove the claim on the merits.  As such, it appears that the Bulpitts concede that they cannot prove a violation of Regulation X.

Regulation X, as raised in the Bulpitts' claims, prohibits foreclosure proceedings in two situations:  (1) if the borrower

---

[8] In fact, the Bulpitts did file another application for loan modification in November of 2015.  Therefore, they were not precluded from doing so.

submits a complete application for loss mitigation before the first foreclosure notice, § 1024.41(f)(2), and, (2) subject to three exceptions, prohibits a foreclosure sale if the borrower submits a complete application after the first foreclosure notice but more than thirty-seven days before the scheduled sale, § 1024,41(g).

The Bulpitts <u>alleged</u> that they submitted a complete application in September of 2013. Carrington, however, notified them that the application was not complete. Gary Bulpitt acknowledged in his email dated November 29 that he had not complied with the documentation requirements with respect to the insurance policy. Therefore, they did not submit a complete application within the time allowed.

The defendants are entitled to summary judgment on the Bulpitts' claim in Count III that the defendants violated RESPA by not complying with the requirements of Regulation X.

B. <u>Regulation B</u>

In the amended complaint, the Bulpitts allege that the defendants violated the ECOA by failing to satisfy the requirements for actions taken on loss mitigation applications under Regulation B, 12 C.F.R. § 1002.9(a) and (c). The defendants move for summary judgment on the claim, asserting

that they complied with all of the requirements of Regulation B. The Bulpitts object.

The Bulpitts provide only conclusory allegations in the amended complaint to support their Regulation B claim.[9]  The ECOA requires a creditor to notify an applicant for credit of the action it has taken on the application.  15 U.S.C. § 1692(d)(1). Regulation B, promulgated to implement the ECOA, provides specific requirements for notification to an applicant for credit.  12 C.F.R. § 1002.9.  Section 1002.9(c) pertains to notice in response to incomplete applications.  In their objection to summary judgment, however, the Bulpitts assert that they intended to bring a claim under only § 1002.9(c), pertaining to notice of an incomplete application.

1.  Notice to Applicant – Section 1002.9(a)[10]

Under § 1002.9(a), a creditor is required to provide notice within a specified number of days of adverse action on a

_____

[9] "[T]he servicer commenced and the [sic] conducted when, due to borrower's pending application for loss mitigation, servicer was expressly barred from doing so under . . . Reg B, 12 CFR Section 1002.9."  Am. Compl. ¶ 3.  "[U]nder Reg B the bank must 'evaluate or 'take action' on Plaintiffs' application for loss mitigation within thirty (30) days of the bank's receipt of a complete application."  Am. Compl. ¶ 22.  The Bulpitts's only other pertinent allegation simply quoted § 1002.9(a) and (c).

[10] Although the Bulpitts now disavow any claim under § 1002.9(a), it is arguably alleged in the complaint and is addressed here to avoid any confusion about the viability of such a claim.

completed application, an incomplete application, and an existing account.  An "adverse action" within the meaning of § 1002.9(a) is defined by § 1002.2(c) and does not include "[a]ny action or forbearance relating to an account taken in connection with inactivity, default, or delinquency as to that account." § 1002.2(c)(2)(ii).  See also § 1691(d)(6) ("'[A]dverse action' . . . does not include a refusal to extend additional credit under an existing credit arrangement where the applicant is delinquent or otherwise in default, or where such additional credit would exceed a previously established credit limit."). Denial of an application for a loan modification, when the applicant is delinquent on payments for the existing loan, is not an adverse action within the meaning of the ECOA and Regulation B.  See, e.g., Stripland v. Wells Fargo Bank, N.A., 2016 WL 7007557, at *5 (N.D. Ga. Nov. 3, 2016); U.S. Bank Nat'l Ass'n v. Tait, 2016 WL 5141990, at *5 (W.D. Wash. Sept. 21, 2016); Perryman v. JPMorgan Chase Bank, N.A., 2016 WL 4441210, at *8 (E.D. Cal. Aug. 23, 2016); Dionne v. Fed. Nat'l Mortg. Ass'n, 2016 WL 3264344, at *6 (D.N.H. June 14, 2016); Offiah v. Bank of Am., N.A., 2014 WL 4295020, at *9 (D. Md. Aug. 29, 2014) (citing cases).

There is no dispute that the Bulpitts did not make payments on the loan after July 1, 2011.  As a result, they were in

default on the mortgage when they applied for a loan modification in September of 2013. They were still in default on the mortgage when the defendants foreclosed in December of 2015. Therefore, the requirements of § 1002.9(a) do not apply to the defendants' response to the Bulpitts' application for a loan modification.

### 2. Incomplete Applications – Section 1002.9(c)[11]

Under § 1002.9(c), a creditor is required to notify an applicant who submits an incomplete application by using either the § 1002.9(a) procedures or by complying with § 1002.9(c)(2). Section 1002.9(c)(2) requires the creditor to "send a written notice to the applicant specifying the information needed, designating a reasonable period of time for the applicant to provide the information, and informing the applicant that failure to provide the information requested will result in no further consideration being given to the application." In addition, "[t]he creditor shall have no further obligation under this section if the applicant fails to respond within the designated time period." § 1002.9(c)(2).

---

[11] The Bulpitts raise 15 U.S.C. § 1691(d)(1) in support of their claim under Regulation B. The court understands their argument to be an explanation of the difference between § 1002.9(b) and § 1002.9(c) and not an attempt to raise a new claim, which would not be allowed.

The defendants provide evidence that Carrington responded to the Bulpitts' application as is required under § 1002.9(c). Carrington sent an "Initial Package Acknowledgement" to Gary Bulpitt on September 12, 2013, stating that it had received the request for mortgage assistance that day, that the request would be reviewed, and that Carrington would notify him if the documentation was not complete and describe what was required with a timeline. On the same day, Carrington sent an "Incomplete Information Notice – First Notice" to Gary Bulpitt that listed the information that was required and provided a deadline of October 12, 2013. Bulpitt contends that he sent an email to Carrington on October 10 with documents.

On October 14, 2013, Carrington sent Bulpitt an "Incomplete Information Notice – Second Notice" that listed the same required information and set a new deadline of October 29, 2013. Gary Bulpitt contends that he sent an email with documents on October 29, which Carrington represents they did not receive. When Bulpitt did not respond, Carrington sent him a "Non-Approval Notice" on October 30, 2013, informing Bulpitt that Carrington could not consider his request for assistance because the request was incomplete. The Notice provided links to contact other sources for assistance and addresses for submitting an appeal.

The defendants contend that because Gary Bulpitt did not respond to the notices within the time allowed, they had no obligation to consider his request for modification.  They further contend that Regulation B does not provide for any appeal process.  As a result, they assert, the Bulpitts' claim fails to the extent it is based on their allegations that the defendants did not respond to their appeal.

The Bulpitts argue that the default bar applicable under § 1002.9(a) does not apply to their claim under § 1002(9)(c).  The defendants, however, did not argue that default barred the Bulpitts' claim under § 1002.9(c).  Therefore that theory is inapposite to the motion for summary judgment.

The Bulpitts do not address the defendants' argument that they complied with the requirements of § 1002.9(c).  It is undisputed that their application continued to be incomplete, which Gary Bulpitt acknowledged in his email to Carrington dated November 29, 2013.  As a result, the Bulpitts have not shown any factual dispute that would prevent entry of summary judgment on the claim of violation of Regulation B.

C.  <u>Statute of Limitations</u>

The Bulpitts argue, as they did in their objection to the defendant's first motion for summary judgment, that "RSA 479:25 is preempted by the statute of limitations provided by Dodd

F[rank] and ECOA." There has never been an issue in this case about the statute of limitations provided in RSA 479:25. The Bulpitts also make statements about the purpose of Regulation X and Regulation B and damages available under RESPA and ECOA.

These arguments are inapposite to the claims under Regulation X and Regulation B in this case, which have been discussed and resolved on summary judgment. To the extent the Bulpitts are attempting to revisit issues that were resolved in the order granting, in part, the defendants' previous motion for summary judgment, they are too late.

D. Equitable Powers

The Bulpitts also argue that this court has jurisdiction to exercise its equitable powers under Regulation X and Regulation B. The issue of equitable relief was addressed in the court's prior orders and will not be addressed again here. Further, because the Bulpitts do not have any claims remaining in this case, there is no need to consider the relief that might be granted on pending and meritorious claims.

Conclusion

For the foregoing reasons, the defendants' motion for summary judgment (document no. 41) is granted.

All of the plaintiffs' claims are dismissed.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

Joseph DiClerico, Jr.
United States District Judge

December 7, 2017

cc: Steven J. Dutton, Esq.
    Henry Klementowicz, Esq.
    William C. Sheridan, Esq.